## J. S. BROWN HARDWARE COMPANY v. INDIANA STOVE WORKS.

### No. 1168.  Decided April 23, 1903.

**1.—Inducing Party to Break Contract Actionable.**

To induce a party to a contract to break it, to the damage of the other party thereto, is an actionable wrong.  Raymond v. Yarrington, ante, followed. (P. 457.)

**2.—Same—Facts.**

A mercantile firm which induces a traveling salesman employed to sell goods exclusively for another firm in a similar business to engage secretly in selling its goods also, is liable to an action for the resulting damages.  (Pp. 456, 457.)

Error to the Court of Civil Appeals for the First District, in an appeal from Galveston.

The Brown Hardware Company sued the Indiana Stove Works, and defendant had judgment on demurrer, which was affirmed on plaintiff's appeal.  Appellant then obtained writ of error.

*L. E. Trezevant* and *Frank M. Spencer,* for plaintiff in error.—1. The court erred in holding that the act of appellee as alleged and complained of by appellant as its cause of action is not an actionable wrong for which appellee is liable in damages.  And the court erred in affirming the judgment of the trial court.

2.  The court erred in holding that the act of collusion alleged to have been resorted to and carried out by and between appellee and Theo. Nash was not, in the eye of the court, the same as a fraud upon appellant.

3.  The court erred in holding that the act of enticement alleged to have been resorted to and accomplished by appellee is not such an act as suppresses competition in trade and is not morally and legally a wrongful act for which appellee is liable in damages.

4.  The court erred in not recognizing the law and the fact to be, that at common law, and uncontrolled by a local statute, such right of action by a master or employer is not denied by any court in the United States or in England, and the court erred in being the first and only court in the United States in denying the right of a master to an action at common law for knowingly interrupting the relation subsisting between him and his servant, or one who owes him an exclusive personal service, by enticing such servant or employer from performing his duty during the existence of such relation, whereby the master or employer is injured, and the court erred in announcing such new doctrine as the law of this case.

5.  The court erred in holding that malice is not inferred from the act of enticement as alleged by appellant, and the court erred in holding that malice was not found in the act of enticement with notice or knowl-

edge on the part of appellee of the relationship alleged to have been existing between appellant and Theo. Nash.

6. The court erred in holding that the doctrine as extended in Lumley v. Gye to include a prima donna employed to sing songs, "is inconsistent with the free institutions of this country, as tending to hold a . servant in bondage to the master and prevent him from bettering his condition," because a license to fraudulently commit an illegal act to the damage of another, and to profit by the wrongful act should be no more tolerated in this country than in England.

Authorities: Angle v. Chicago, St. P. M. & O. Railway Co., 151 U. S., 1. In this case the court cites and follows the leading cases of Lumley v. Gye and Bowen v. Hall, reported in 1 English Ruling Cases, 706, 717, and cites Walker v. Cronin, 107 Mass., 555, and Jones v. Stanley, 76 N. C., 355. See opinions of Crompton, J., and Erle, J., and Wightman, J., in Lumley v. Gye, reported in Wood's Mast. and Serv., 450, where see cases cited. In Hart v. Aldrige, Cowp., 54, a case often followed, says Bigelow on Torts, 128, the gist of the action is stated by Lord Mansfield to be that the defendant had enticed away a man who stood in the relation of servant to the plaintiff and by whom he was to be benefited. This, says Blackstone, as it is an ungentlemanlike act, so it is also an illegal act. 3 Blackstone, 142; Martens v. Reilly, 84 N. W. Rep., 840, citing Angle v. Railway Co., supra, and other cases (a well considered case); Lally v. Cantwell, 30 Mo. App., 524 (a well considered case); Tyson v. Ewing, 3 J. J. Marsh, 185; Bixby v. Dunlap, 56 N. H., 456; 22 Am. Rep., 475-485, note (where see all the authorities cited); 11 Am. St. Rep., 474, note (see the subject fully discussed in Bigelow on Torts, 7 ed., 128; Rule 33 and cases cited in Moak's Underh. on Torts, 335; Hewett v. Ontario Copper Co., 44 U. C. Q. B., 287 (cited in Moak's Underh. on Torts, 336, a case of enticing certain servants from plaintiff's service; held, following Lumley v. Gye, that plaintiff was entitled to recover); Lawson on Cont., sec. 115; 4 Wait's Act. and Def., 407; Webb's Pollock on Torts, 669; Lawson's Rights and Rem., sec. 289; Cooley on Torts, 2 ed., 330 (where the author says, "This general subject was so fully discussed by the Court of Queen's Bench [referring to Lumley v. Gye] that a reference to the case, and the authorities upon which it was decided, seems to be all that is important in this connection." Citing among other cases Chipley v. Atkinson, 23 Fla., 206; 11 Am. St. Rep., 367, which is said to be a "luminous case" in West Virginia Transfer Co. v. Standard Oil Co., 40 S. E. Rep., 591.)

The law can not be subject to the reproach of denying a right of action to a master who employs a servant, paying him salary and expenses, to travel and sell the master's wares, against one who secretly and surreptitiously lures and seduces, for pay, that servant to deceive his master and to sell the goods of the seducer, of a like kind, and in direct competition with the master. Such a proposition must shock the judicial conscience. To bring the proposition into clearer light,

suppose one doing business in a city employs a servant or clerk to sell his goods and wares, and a person across the street from him engaged in the same business, in competition with the master of that clerk, should by secretly paying that servant seduce him, while in the employment of the master, to sell the seducer's wares instead of those of his master. I.1 such case can it be doubted that an action would lie?·

*J. E. Williamson, H. W. Rhodes, N. L. Lindsley,* and *Mott & Armstrong,* for appellee.—This action was originally brought for luring and enticing away a servant, and the pleadings must show affirmatively that the servant was lured and enticed away and detained from the master. It is not sufficient to show an interference with a contract.   16 Am. and Eng. Enc. of Law, 2 ed., 1101, and authorities cited in Note 1. Dissenting opinion of Coleridge, J., in Lumley v. Gye, 2 El. & Bl., 216, 16 Am. and Eng. Enc. of Law, 2 ed., 1110; Walker v. Cronin, 107 Mass., 567; Boyson v. Thorn, 98 Cal., 578; Chambers v. Baldwin, 91 Ky., 121; Bourlier v. Macauley, 91 Ky., 135; Glencoe Land Co. v. Commission Co., 138 Mo., 439; McCann v. Wolff, 28 Mo. App., 447.

Admitting, for the purposes of this case, that the strict rule contended for by plaintiff as to the interfering with the relation between master and servant exists in this country (and which is expressly denied by appellee), still a binding and enforcible contract for exclusive personal services, not obnoxious to the statute of frauds, must be set forth in clear and unambiguous terms.   Campbell v. Cooper, 34 N. H., 49; Sykes v. Dixon, 9 Ad. & El., 693; Schouler's Dom. Rel., 4 ed., secs. 459, 487, pp. 728, 729.

It would be against the policy of the law and the genius of our free institutions to permit a man to sell his exclusive personal services to another for an indefinite length of time.   Every American citizen is a free agent, and another can not by any attempted species of hiring, or otherwise, reduce him to a state of servitude and prevent him from bettering his condition or rising in the world.   The mere menial relation of servant to master, as created under the statute of Edward III in 1349, and as discussed in the old English cases, has no standing in· this country, except in so far as created by statute in some of the States. Schouler's Dom. Rel., 4 ed., sec. 460.; Parsons v. Trask, 7 Gray, 473; Mary Clark's Case, 1 Blackf., 122.

In no event can recovery be had against a third person for interfering between master and servant unless the servant was induced to break his contract by deceit, compulsion or intimidation.   Cooley on Torts, 2 ed., 581, marginal p. 497; Chambers v. Baldwin, 91 Ky., 121; Guether v. Altman (Ind.), 60 N. E. Rep., 355; Boyson v. Thorn, 98 Cal., 578; Perkins v. Pendleton, 90 Me., 166; Glencoe Co. v. Commission Co., 138 Mo., 439; Raycroft v. Taynton, 68 Vt., 219; Johnston Harvester Co. v. Meinhardt, 9 Abbott New Cases, N. Y., 393.

Nash being a free man had the right to make a lawful contract, and if he violated it was liable in damage to the other contracting party for

breach thereof. We submit the correct rule in America is that an action can not be maintained for inducing a third party to break his contract with plaintiff; the consequence, after all, being a broken contract, for which the party to the contract may have his remedy by suing upon it. Cooley on Torts, 2 ed., 581, marginal p. 497; Schouler's Dom. Rel., 4 ed., sec. 487, pp. 728, 729; Kimball v. Harman, 34 Md., 407; McCann v. Wolff, 28 Mo. App., 447; Smith v. Blake, 1 Day, 258; Green v. Kimble, 6 Blackf., 552.

A lawful act is not actionable though it proceeds from malicious motives. In the competition of business and the rivalry of trade defendant had the right to employ agents to sell its goods, and if harm resulted to plaintiff, it was damnum absque injuria. Cooley on Torts, 2 ed., 832, marginal p. 690; Delz v. Winfree, 80 Texas, 400; Salado College v. Davis, 47 Texas, 135; Construction Co. v. Middlegge, 75 Texas, 637; Adler v. Fenton, 65 U. S., 696 (24 How., 407); Jenkins v. Fowler, 24 Pa., 308; Phelps v. Nowlen, 72 N. Y., 39; Glendon Iron Co. v. Uhler, 75 Pa., 467; Benjamin v. Wheeler, 8 Gray, 410; Chambers v. Baldwin, 91 Ky., 121; Bourlier v. Macauley, 91 Ky., 135; Chatfield v. Wilson, 28 Vt., 49; Frazier v. Brown, 12 Ohio St., 294; Boyson v. Thorn, 98 Cal., 578; Guether v. Altman, 60 N. E. Rep., 355; Perkins v. Pendleton, 90 Me., 166; Glencoe Co. v. Hudson Co., 138 Mo., 439.

The damages alleged and sought to be recovered are too remote, conjectural and hypothetical. The anticipated profits of a business are dependent upon so many contingencies, such as fluctuations in trade, competition of aggressive rivals, crops made by the agriculturist, demand and supply, transportation problems, and others too numerous to mention, that they can not be made the basis of any recovery. Hope v. Alley, 9 Texas, 395; Wilson v. Graham, 14 Texas, 224; De la Zerda v. Korn, 25 Texas Supp., 188; Calhoun v. Pace, 37 Texas, 454; Turner v. Strange, 56 Texas, 141; Jones v. George, 56 Texas, 149; Rains v. Herring, 68 Texas, 468; Broussard v. Railway Co. 80 Texas, 329; Elmendorf v. Classen, 92 Texas, 472; Tompkins v. Galveston St. Railway Co., 4 Texas Civ. App., 1; Frazer & Chalmers v. Mining, etc., Co., 9 Texas Civ. App., 210; Clifford v. Leroux, 14 Texas Civ. App., 340; Howard v. Manufacturing Co., 139 U. S., 199, and authorities there cited.

GAINES, Chief Justice.—This suit was brought by the J. S. Brown Hardware Company against the Indiana Stove Works. The petition alleged, in substance, that the plaintiff is a corporation chartered under the laws of Texas, and that it is and has been engaged for many years in the business of selling stoves, stove fixtures and attachments, and other hardware by wholesale throughout the State; that it had employed one Nash as a traveling salesman to sell its wares and that Nash had agreed to serve it exclusively; that while he was so engaged, the defendant, the Indiana Stove Works, also a corporation and

engaged in the business of manufacturing and selling stoves and stove attachments, and knowing Nash's contract with the plaintiff, induced him to enter its service, and that the said Nash, while under contract with plaintiff and engaged in its employment, did, without plaintiff's knowledge, engage in the sale of the defendant's products and so continued for the term of five years. The plaintiff further alleges in effect that by reason of the conduct of the defendant it lost trade and was damaged many thousand dollars.

A demurrer to the petition was sustained, and on appeal the judgment was affirmed by the Court of Civil Appeals.

In the case of Raymond v. Yarrington, this day decided, we have held, that to induce a party to a contract to break it to the damage of the other party thereto is an actionable wrong. That ruling is decisive of the question in the present case. It was in our opinion error to sustain the demurrer to the petition.

The judgment of the District Court and that of the Court of Civil Appeals are therefore reversed and the cause remanded.

*Reversed and remanded.*