## TEXAS MOTION PICTURE AND VITAPHONE OPERATORS, UNION NO. 56,-880, v. GALVESTON MOTION PICTURE OPERATORS, LOCAL NO. 305 OF INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYES AND MOVING PICTURE MACHINE OPERATORS OF UNITED STATES AND CANADA.

### No. 10966.

Court of Civil Appeals of Texas. Galveston.

Oct. 5, 1939.

Randolph Pierson, of Galveston, for appellant.

D. J. Wilson, of Galveston, for appellee.

GRAVES, Justice.

Appellant (the Texas Motion Picture and Vitaphone Operators, Union No. 56,-880), a colored labor-union organized under Texas R.S.Article 5152, but not an affiliate of the American Federation of Labor, pursuant to R.S.Article 4662, appeals from an order of the Tenth District Court of Galveston County granting the appellee (Galveston Motion Picture Operators, Local No. 305, of the International Alliance of Theatrical Stage Employes and Moving Picture Operators of the United States and Canada), a white affiliate of the American Federation of Labor, a temporary injunction against it, restraining and enjoining it, its agents, members, or employes, as follows:

"* * * from interfering, or attempting to interfere, in any manner or way whatsoever with the full and complete carrying out of the terms of the written contract entered into on or about the 1st day of September, 1938, and ending August 31st, 1942, by and between the appellee herein and one Mrs. Anita Martini; as well as from interfering or attempting to interfere with the parties to said contract in their full and complete performance of said contract, and from interfering or attempting to interfere with the property rights of the appellee in said contract; from picketing, from carrying display-banners in front of the 'Dixie No. 3' theatre in the City of Galveston, Texas, from placing newspaper advertisements in any newspaper, all of such activities having for their purpose the interference with the attendance of the public generally at such picture theatre, Dixie No. 3; likewise restraining and enjoining the appellant, its agents, members and employes from interfering, or attempting to interfere in any manner whatsoever with the appellee, its officers, officials, and members, and with

said Mrs. Anita Martini, in so far as the carrying out of the terms and provisions of said written contract herein referred to is concerned."

Although the cause was argued orally for both sides when submitted, no briefs for either have been filed.

The quoted order was made after the receipt of evidence for both parties, an agreed transcript of which has been brought up with this record.

In the brief oral argument submitted by its able counsel at the bar, the appellant, grounding its position upon the statement-of-facts so brought here, urged that the order so adverse to it was improvident, in that, on the facts so shown, the injunction against it directly contravened its privileges, as applied to the circumstances, granted it under Texas R.S. Article 5153; that, undisputedly, it had neither invaded nor trespassed upon the premises of the appellee without its consent, nor done anything else than to attempt, by peaceful and lawful means, to persuade Mrs. Anita Martini to disregard her contract with the appellee by discharging the latter's white employes as operators of such Dixie No. 3 theatre, and to use and employ the appellant's colored operators in their place and stead.

After a careful consideration of the record, inclusive of the entire statement-of-facts and of the arguments referred to, this court overrules appellant's contention and sustains the action of the learned trial court as having been well within its discretion.

It undisputedly appeared that neither appellant nor any of its colored members sustained any relation of employes or otherwise to either the appellee or Mrs. Martini; that none of them were parties to the contract between the latter two, nor had they had any dispute or controversy of any sort with either of them, except that, basing their approach upon the sole ground that they constituted a colored labor-union under the state statute referred to, the theatre involved, which was wholly owned or controlled by Mrs. Martini, only catered to and served colored people, wherefore they—as such colored union workers— were entitled to have their members operate it, instead of the white members of the other union Mrs. Martini was using under her contract with the appellee.

As against this single claim, from the appellee's side, it likewise without controversy appeared that both it and Mrs. Martini were satisfied with the contract so existing between them, having no dispute of any sort with each other, or with the appellant, or any of its members; that they were engaged in a quiet carrying-out and enjoyment of such agreement, which was in writing with an unexpired duration until September 1, 1942, when the appellant—its officers, agents, and members— presented such sole demand to Mrs. Martini, requesting that she cancel her contract with the appellee and form one with them, at the same time picketing the theatre and otherwise interfering with her business; that such picketing, while without violence and otherwise peaceful, was accompanied by the carrying of banners back and forth on the sidewalk in front of the theatre bearing the legend, "This theatre is unfair to Colored Operators' Local 56880", which continued every day from 3 o'clock in the afternoon until the last show for that day, and until it was stopped by the trial court's injunction; that they followed these acts by further, through their president, publishing in a newspaper circulated in that area of the City of Galveston, a letter elaborating upon this sole alleged grievance of the appellant and its membership, charging Mrs. Martini with having refused to negotiate with them, despite many petitions from negro patrons and organizations, asserting that appellant and its members were being wrongfully deprived of $6000 per year by her failure to employ them instead of the appellee's members, and giving notice that, in consequence of her refusal to yield to their demands, the boycotting of her theatre by the appellant would begin on Monday, June 12 of 1939.

Finally, that appellant's stated conduct so influenced Mrs. Martini that she demanded of the appellee that it protect her against such interference, requesting in connection therewith that the contract between them be cancelled because of the resulting injury to her business; whereupon, the appellee instituted this proceeding for injunctive-relief, thereby ending such threat to its contract so long as the restraint awarded remains in effect.

As this court interprets it, the statute invoked by the appellant has no application to the situation thus existing here; upon facts in that respect not in legal effect dissimilar to these, it was in essential purport so held in Culinary

Workers' Union v. Fuller, Tex.Civ.App., 105 S.W.2d 295, also in Henke & Pillot v. Amalgamated Meat Cutters, Tex.Civ.App., 109 S.W.2d 1083, writ of error dismissed; in other words, this appellant has no legal grievance merely because the appellee refused to abrogate a private contract it had with Mrs. Martini, to which the appellant was neither a party nor in privity; furthermore, it being such a stranger thereto, but at the same time having full knowledge thereof, and of the business being conducted between themselves by the parties thereto, it, as such an interloper, not only would have laid itself liable in damages to a party thereto for having knowingly induced a breach thereof, had that occurred as a result of its acts (Raymond v. Yarrington, 96 Tex. 443, 73 S.W. at page 800, 62 L.R.A. 962, 97 Am.St.Rep. 914, and Brown v. Indiana Stove Works, 96 Tex. 453, 73 S.W. 800), but did in fact subject itself to the power of a court of equity in this proceeding to protect the appellee against such an unwarranted interference with its peaceful contractual relationship with Mrs. Martini; especially so, since obviously no remedy at law would have been adequate, and irreparable injury would probably have resulted, had the interference been permitted to continue. Henke & Pillot v. Amalgamated Meat Cutters, supra, 109 S.W.2d at page 1085, par. 3, and cited authorities.

Without further discussion, on the holding that no abuse of a sound judicial discretion has been shown, the judgment will be affirmed.

Affirmed.