CARPENTERS AND JOINERS UNION OF AMERICA, LOCAL NO. 213, et al. v. RITTER'S CAFE et al.

No. 11026.

Court of Civil Appeals of Texas. Galveston.

Feb. 15, 1940.

Rehearing Denied March 21, 1940.

224

Sewall Myer, of Houston, for appellants.

Bernard A. Golding, of Houston, for appellees.

GRAVES, Justice.

This appeal—brought to and advanced in this court under R.S. Article 4662—is from an order of the 127th District Court of Harris County, sitting without a jury, temporarily restraining and enjoining the appellants from picketing or causing to be picketed the appellees' place of business at 418 Broadway in Houston, Harris County, Texas, pending a final trial of the cause for a permanent injunction on its merits; it was entered after a hearing of testimony presented by the appellees, the appellants "having offered no testimony nor evidence, though full opportunity to so do was afforded them."

In support of its decree, the learned trial court (pursuant to statutory requirement after request) filed these findings of fact and conclusions of law, those of fact having been in no wise attacked, as being without support in the evidence, either below or here: · ·

"Findings of Fact.

"(1) That the plaintiff E. R. Ritter, at all times material hereto, owned and operated Ritter's Cafe, located at 418 Broadway, in the City of Houston, Harris County, Texas, and that said Ritter was at such times and is engaged in the cafe and restaurant business in the sale and dispensation of cooked foodstuffs and other incidental commodities, usually and generally offered for sale to the general public by similár cafes and restaurants.

"(2) That in the operation of said restaurant and cafe plaintiff Ritter, at all times material hereto, and for some three years prior thereto, employed as cooks, waiters, and waitresses only members in good standing with Hotel and Restaurant Employees International Alliance, Local No. 808.

"(3) That plaintiff Ritter, in the conduct and operation of said restaurant and cafe, at all times material hereto, had no bona fide labor-dispute with his said employees, as to working conditions, hours of employment or wages, and that plaintiff had no dispute with said union.

"(4) That said Local No. 808 is the only organization having jurisdiction over plaintiffs' said employees.

"(5) That on or about November 4, 1939, plaintiff Ritter entered into a written agreement with one W. A. Plaster, a contractor, whereby the latter was to construct and erect a building for said Ritter in the 2800 block on Broadway, which is twenty-four (24) blocks removed from plaintiffs' said cafe, being some mile and a half therefrom.

"(6) That the business-agents of defendant-unions called upon plaintiff and asked that a provision be inserted in said contract requiring the contractor to use union labor on said job.

"(7) That shortly after the said Plaster began erecting said building defendants Carpenters and Joiners Local No. 213, and Painters Local No. 130, by and through and upon the advice of their duly authorized officers and representatives, and by agreement between them, began a picketing campaign against plaintiff and his cafe, by having a member of one of said unions walk back and forth on the sidewalk in front of plaintiff's said cafe, and at no other place, carrying a sign or placard bearing the following inscription, or words to this effect:

"This Place is Unfair to Carpenters and Joiners Union of America, Local No. 213, and Painters Local No. 130, Affiliated With American Federation of Labor."

"(8) That plaintiff at all times material hereto, and for a long time prior theretofore, had employed no carpenters or painters at his said cafe.

"(9) That no building was under construction at 418 Broadway at all times material hereto, nor was any painting being done there.

"(10) That said Local No. 213 and said Local No. 130 had no dispute with plaintiff concerning, in any manner, the conduct and operation of plaintiff's cafe at 418 Broadway.

"(11) That no representative of either said Local No. 213 or said Local No. 130, had called upon the said contractor Plaster to request said Plaster or to urge him to use only members of said defendant-locals in the construction of said building in the 2800 block on Broadway.

"(12) That shortly after plaintiffs filed suit for injunctive relief, the defendants, acting jointly and in pursuance of the agreement between them, changed or had changed the wording or inscription on the banner or placard being carried by the picket to the following, or words to this effect:

"The Owner of This Cafe Has Awarded a Contract to Erect a Building to W. A. Plaster Who is Unfair to the Carpenters Union 213 and Painter Union 130, Affiliated With the American Federation of Labor."

"(13) That the said contractor Plaster had no contract with either of the defendant unions and that no dispute existed, at all times material hereto, between said Plaster and any of his employees engaged in erecting said building.

"(14) That no employee of Ritter's cafe and E. R. Ritter, and no employee of W. A. Plaster is on strike.

"(15) That the purpose of picketing plaintiff's cafe at 418 Broadway is for the avowed purpose of forcing and compelling plaintiff to require the said contractor, Plaster, to use and employ only members of the defendant unions on the building under construction in the 2800 block on Broadway.

"(16) That plaintiff's receipts at his said cafe and restaurant were some sixty (60%) per cent less while said picketing continued than theretofore.

"(17) That plaintiff's employees, members of said Local 808, quit plaintiff's employ on the day the picket-line was established after a telephone call from the Secretary of said Local No. 808, and had not returned at the time of the hearing herein.

"(18) That said Local No. 808 withdrew from plaintiff's cafe its union card after said picketing began.

"(19) That the further effect of said picketing has been to make it impossible for plaintiff to have deliveries made to his cafe by truck-drivers, members of unions not connected with this law suit, of foodstuffs and other commodities necessary to the orderly conduct of his business.

"(20) That the further effect of said picketing is to prevent members of all trades-unions from patronizing plaintiff's cafe and to erect a barrier around plaintiff's cafe, across which no member of defendant-unions or any affiliate will go.

"(21) That no violence attended the said picketing of plaintiff's cafe.

"(22) That defendants and each of them will continue to picket plaintiff's said cafe unless restrained by order of this Court.

"Conclusions of Law.

"(1) That plaintiff is engaged in a lawful enterprise in a lawful manner in the operation of his cafe and restaurant.

"(2) That the picketing at 418 Broadway constitutes an unlawful invasion of plaintiff's right to conduct a legitimate enterprise and an attempt to interfere illegally with plaintiff's right to contract with third parties.

"(3) That said picketing, being illegal and for an unlawful purpose, should be restrained.

"Kenneth McCalla,

"Judge, 127 Judicial District of Texas."

The single question of law the appeal presents is whether the court abused its discretion in thus granting the writ. Scanlan v. Houston L. & P. Co., Tex.Civ.App., 62 S.W.2d 537, at page 539, and authorities there cited.

In passing upon it, the facts so found below are binding upon this court, in the absence both of a jury and any challenge thereof: 3 Tex.Jur., paragraph 771, footnote 5, and cited authorities; 4 Tex. Dig., Appeal and Error, and collated cases; International-Great Northern

R. Co. v. Singer Iron & Steel Co., Tex. Civ.App., 96 S.W.2d 1003, 1006; Standard Savings & L. Association v. Fitts, Tex.Civ. App., 24 S.W.2d 507.

Not only so, but they will be here reviewed with the objective of determining whether or not they support the court's exercise of discretion.

In challenging the determination thus adverse to them, the appellants—making common cause here as they did below—through able counsel thus state their conception of the fundamental issues involved:

"This appeal involves the determination of two very simple propositions:

"First. The right of a labor-union to carry upon a public sidewalk, in a peaceful manner, a placard having inscribed thereon a statement advising the public of a situation which affects such union. Stated differently, the appellants contend that they are entitled to the protection of free speech and freedom of the press (guaranteed to them by the 14th Amendment to the Constitution of the United States and Section Eight of the Bill of Rights of the Constitution of Texas, Vernon's Ann.St.) in publicising their views upon a situation and condition affecting themselves.

"Second. The other question to be decided by this court is the contention of appellants that Section Eight of the Bill of Rights of Texas denies to courts of equity the jurisdiction to interfere by injunction with the exercise of the right of free speech and freedom of the press, and that Section Eight vests jurisdiction for remedying any abuse of this constitutional privilege, exclusively in the courts of law."

They rely for support, in the main, upon these authorities: Snyder v. City of Milwaukee, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. ——, November 22, 1939, Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L. Ed. 949; First Amendment, United States Constitution; Fourteenth Amendment, United States Constitution; Bill of Rights, Texas Constitution, Section Eight; Ex parte Tucker, 110 Tex. 335, 220 S.W. 75.

In briefs and arguments, however, they become inept in appealing to their own construction of the evidence rather than the findings so returned by the learned trial judge.

They further—courteously and with respect—invoke a direct deliverance from this tribunal upon the postulates they so lay down.

But after careful consideration of the record, it is the opinion of this court, not only (1) that appellants' quoted propositions constitute a non sequitur from the factual basis to which alone they are referable, but (2) that, when the challenged order is measured by the facts so found, it becomes plain that no abuse of discretion appears—on the contrary, that the quoted conclusions of law are each correct, and should be affirmed.

Indeed, under the declaration of this State's public policy with reference to "Labor Organizations", as expressed in R. S. Articles 5152–5154, inclusive, and the interpretation and construction thereof given by our courts, that the questions so sought to be raised by appellants have, upon states of fact not in legal effect different from those embodied in these findings, already been determined adversely to the appellants in these, among other holdings: Webb v. Cooks Union, Tex.Civ.App., 205 S.W. 465; Cooks', Waiters' and Waitresses' Union v. Papageorge, Tex.Civ.App., 230 S.W. 1086, 1087; Sheehan v. Levy, Tex.Civ.App., 215 S.W. 229; Culinary Workers' Union v. Fuller, Tex.Civ.App., 105 S.W.2d 295; International Association v. Federated Association (Beard & Stone case), Tex.Civ. App., 109 S.W.2d 301; Id., Tex.Com.App., 130 S.W.2d 282; Henke & Pillot v. Amalgamated Meat Cutters, Tex.Civ.App., 109 S.W.2d 1083, error dismissed; Texas Motion Picture case, Texas Motion Picture & Vitaphone Operators, Union No. 56,880, v. Galveston Motion Picture Operators, Tex. Civ.App., 132 S.W.2d 299.

In other words, that these decisions in Texas, authoritatively construing this state's law with reference to the same subject-matter this controversy has to do with, have evolved two principles that control the disposition of this appeal, to wit: (1) That picketing by a labor organization or union, or its members (which was unlawful at common law), has been legalized by our cited statutes, with the rather limited objective of allowing striking employees who have a bona fide dispute with their employer over wages, hours, or working conditions, to persuade other employees to leave him, or dissuade third persons from becoming his employees; (2) that our courts of equity will, in proper cases affecting labor organizations or unions, as well as any other litigants, grant protective injunctions where that relief is necessary to the continued preservation and enjoyment

of an existing contract between parties having a legal right to make and live under it, as against third persons who sustain no relation either to such parties thereto or to the contract itself.

■ Not only so, but as a corollary, they have further declared that no right of free speech under the fundamental law of either nation or state is transcended by an injunction restraining the picketing of a place of business by persons (whether members of a labor organization or union, or not) who seek either to prevent the public from trading with the picketed place, or to compel its owner to break a contract which he has with some such disassociated third person; see the Webb, Papageorge, and Texas Motion Picture Co. cases, supra, respectively.

■ It would serve no needful purpose to detail or reiterate those holdings, since they seem to declare the now settled law in Texas that must rule the undisputed facts here presented; under them, the appellants in this instance were without right either, first, to picket the appellees' cafe, or, second, to exert the pressure they were employing upon him, with the objective of breaking his preexisting contract with a disassociated third person—it also having to do with a subject-matter far removed both from the place and business of the picketing.

While the conclusions stated determine the merits of the appeal, in deference to the earnestness of appellants and their able counsel, who are within their privileges in invoking this court's consideration of what they conceive to be their rights under the constitutions of the United States and of Texas, the opinion may be added that those principles do not apply to facts like those at bar; that neither the holding of the Federal Supreme Court in the Snyder case, nor that of the Texas Supreme Court in the Tucker case, both supra, rule this situation, each being distinguishable upon its facts, in this:

(1) In the former, public ordinances of the City of Milwaukee were under review, which, in terms, absolutely prevented the distribution on the street of printed circulars, without reference to whether they were libelous, obscene, or fraught with injury or damage to another, or whether they contained statements sounding in fraud or trespass—the court in consequence holding them to be invalid, as against the constitutional right of an individual member of a labor union—then having a bona fide labor dispute with, and being in a consequent strike against, his employer—to peaceably distribute circulars along the sidewalk in front of its place of business about that controversy; while here the appellants were acting—not as individuals in assertion of personal rights in a controversy between themselves and the appellees, growing out of relations of employer and employee among them—but as complete strangers thereto, in two cooperating organizations, and with no interest of any sort involved or at stake, except the possibility of getting the work another already had.

(2) In the latter, Tucker, an individual officer of his union, which had been enjoined by the district court from using such abusive language towards the employees of the Telephone Company "which might be calculated to provoke * * * a breach of the peace", was discharged from a punishment for contempt for violation of such sweeping restraint against a man so situated from speaking his mind; the court holding that equity would not supervise what such a man might say, or write, by limiting his utterances to what a court or judge might think proper; but in doing so, Chief Justice Phillips added this declaration as the law, upon facts deemed to be upon a parity with those here at bar: "Equity will protect the exercise of natural and contractual rights from interference by attempts at intimidation or coercion. Verbal or written threats may assume that character. When they do, they amount to conduct, or threatened conduct, and for that reason may properly be restrained. Cases of that sort, or of analogous nature, are not to be confounded with this one." [110 Tex. 335, 220 S.W. 76.]

■ Wherefor, as contradistinguished from appellants' quoted conceptions, the two contrary rules, supra, deemed to have been established by our courts may be thus in purport restated:

"(1) The right of free speech is limited by the constitutional rights of others to acquire and possess property, an instance of which is the right to carry on a business in a lawful way. It has been said that it does not follow that because a single individual may under the constitutional guaranty freely speak and write as he pleases without injunctive restraint, an association or combination of persons may lawfully do likewise, as, in such cases, the views expressed

are not merely those of the individual, but the express concerted will and desire of a powerful organization." See Oakes on Organized Labor, 1927 Ed., p. 884, section 880.

(2) These appellants have no legal grievance merely because the appellees refused to abrogate a private contract they had with W. A. Plaster to which the appellants were neither parties nor in privity; furthermore, they being such strangers thereto, but at the same time having full knowledge thereof, and of the business being conducted between themselves by the parties thereto, they, as such interlopers, not only would have laid themselves liable in damages to a party thereto for having knowingly induced a breach thereof, had that occurred as a result of their acts (Raymond v. Yarrington, 96 Tex. 443, 72 S.W. 580, 73 S.W. 800, 62 L.R.A. 962, 97 Am.St. Rep. 914, and Brown Hardware Co. v. Indiana Stove Works, 96 Tex. 453, 73 S.W. 800), but did in fact subject themselves to the power of a court of equity in this proceeding to protect the appellees against such an unwarranted interference with their peaceful contractual relationship with Mr. Plaster; especially so, since obviously no remedy at law would have been adequate, and irreparable injury would probably have resulted, had the interference been permitted to continue. Henke & Pillot v. Amalgamated Meat Cutters, supra, 109 S.W.2d, at page 1085, par. 3, and cited authorities.

Obviously, it is thought, the rules so relied upon and the citations appellants make as supporting them, have no practical application to the case here made.

Without further discussion, an affirmance will be ordered.

Affirmed.