## CARPENTERS AND JOINERS UNION OF AMERICA, LOCAL NO. 213, et al. v. RITTER'S CAFE et al.

### No. 11150.

Court of Civil Appeals of Texas. Galveston.
Feb. 6, 1941.

Rehearing Denied April 3, 1941.

Sewall Myer and Frank Campbell Fourmy, both of Houston, for appellants.

Bernard A. Golding and Vinson, Elkins, Weems & Francis, all of Houston, for appellees.

MONTEITH, Chief Justice.

This is an appeal from a judgment of the district court of Harris County granting an application of appellees, Ritter's Cafe and E. R. Ritter, for a permanent injunc-

tion restraining appellants, Carpenters and Joiners Union of America, Local No. 213, and Painters Local Union No. 130, and their members, from picketing or causing to be picketed, and from carrying certain banners. and placards upon the sidewalks in front of appellees' place of business at 418 Broadway in Houston, Texas.

Appellants answered by general demurrer, general denial and exceptions. They admitted that they had peacefully picketed appellees' place of business, but contended that, in doing so, they were exercising their rights of free speech and freedom of the press and that any judgment enjoining them from exercising such rights would be a violation and abridgment of their rights under the Fourteenth Amendment to the Constitution of the United States and Section 8 of the Bill of Rights of the State of Texas, Vernon's Ann.St.Const.

This is the second appeal to this court in this action. The first appeal, which is reported under the same title in 138 S.W.2d 223, 224, was from an order of the district court of Harris County temporarily enjoining appellants herein from the carrying of the placards complained of and from picketing appellees' place of business. Appellants then, as in this appeal, contended that any action by the court abridging their rights of expressing their views by means of placards on the public sidewalks and from picketing appellees' place of business would constitute an abridgment of their right of free speech.

This appeal involves the right of a court of equity to permanently enjoin a labor organization from picketing and from expressing their views upon a situation affecting themselves by means of banners and placards on the sidewalk in front of an establishment with which they have no labor dispute and where it is proven that such actions are injurious and prejudicial to the business and property rights of the complaining parties.

Upon a hearing of appellees' evidence—no evidence was offered by appellants—it was agreed by the parties that the fact findings, as set out in the opinion of this court in the first appeal herein, were the true facts in the case. On the request of appellees for findings of fact the trial court filed said findings as his findings of fact and conclusions of law. They are as follows:

"Findings of Fact.

"(1). That the plaintiff E. R. Ritter, at all times material hereto, owned and operated Ritter's Cafe, located at 418 Broadway, in the City of Houston, Harris County, Texas, and that said Ritter was at such times and is engaged in the cafe and restaurant business in the sale and dispensation of cooked foodstuffs and other incidental commodities, usually and generally offered for sale to the general public by similar cafes and restaurants.

"(2) That in the operation of said restaurant and cafe plaintiff Ritter, at all times material hereto, and for some three years prior thereto, employed as cooks, waiters, and waitresses only members in good standing with Hotel and Restaurant Employees International Alliance, Local No. 808.

"(3) That plaintiff Ritter, in the conduct and operation of said restaurant and cafe, at all times material hereto, had no bone fide labor-dispute with his said employees, as to working conditions, hours of employment or wages, and that plaintiff had no dispute with said union.

"(4) That said Local No. 808 is the only organization having jurisdiction over plaintiffs' said employees.

"(5) That on or about November 4, 1939, plaintiff Ritter entered into a written agreement with one W. A. Plaster, a contractor, whereby the latter was to construct and erect a building for said Ritter in the 2800 block on Broadway, which is twenty-four (24) blocks removed from plaintiffs' said cafe, being some mile and a half therefrom.

"(6) That the business-agents of defendant-unions called upon plaintiff and asked that a provision be inserted in said contract requiring the contractor to use union labor on said job.

"(7) That shortly after the said Plaster began erecting said building defendants Carpenters and Joiners Local No. 213, and Painters Local No. 130, by and through and upon the advice of their duly authorized officers and representatives, and by agreement between them, began a picketing campaign against plaintiff and his cafe, by having a member of one of said unions walk back and forth on the sidewalk in front of plaintiff's said cafe, and at no other place, carrying a sign or placard bearing the following inscription, or words to this effect:

" 'This Place is Unfair to Carpenters and Joiners Union of America, Local No. 213, and Painters Local No. 130, Affiliated With American Federation of Labor.'

"(8) That plaintiff at all times material hereto, and for a long time prior theretofore, had employed no carpenters or painters at his said cafe.

"(9) That no building was under construction at 418 Broadway at all times material hereto, nor was any painting being done there.

"(10) That said Local No. 213 and said Local No. 130 had no dispute with plaintiff concerning, in any manner, the conduct and operation of plaintiff's cafe at 418 Broadway.

"(11) That no representative of either said Local No. 213 or said Local No. 130, had called upon the said contractor Plaster to request said Plaster or to urge him to use only members of said defendant-locals in the construction of said building in the 2800 block on Broadway.

"(12) That shortly after plaintiffs filed suit for injunctive relief, the defendants, acting jointly and in pursuance of the agreement between them, changed or had changed the wording or inscription on the banner or placard being carried by the picket to the following, or words to this effect:

"'The Owner of This Cafe Has Awarded a Contract to Erect a Building to W. A. Plaster Who is Unfair to the Carpenters Union 213 and Painter Union 130, Affiliated With the American Federation of Labor.'

"(13) That the said contractor Plaster had no contract with either of the defendant unions and that no dispute existed, at all times material hereto, between said Plaster and any of his employees engaged in erecting said building.

"(14) That no employee of Ritter's cafe and E. R. Ritter, and no employee of W. A. Plaster is on strike.

"(15) That the purpose of picketing plaintiff's cafe at 418 Broadway is for the avowed purpose of forcing and compelling plaintiff to require the said contractor, Plaster, to use and employ only members of the defendant unions on the building under construction in the 2800 block on Broadway.

"(16) That plaintiff's receipts at his said cafe and restaurant were some sixty (60%) per cent less while said picketing continued than theretofore.

"(17) That plaintiff's employees, members of said Local 808, quit plaintiff's employ on the day the picket-line was established after a telephone call from the Secretary of said Local No. 808, and had not returned at the time of the hearing herein.

"(18) That said Local No. 808 withdrew from plaintiff's cafe its union card after said picketing began.

"(19) That the further effect of said picketing has been to make it impossible for plaintiff to have deliveries made to his cafe by truck-drivers, members of unions not connected with this law suit, of foodstuffs and other commodities necessary to the orderly conduct of his business.

"(20) That the further effect of said picketing is to prevent members of all trades-unions from patronizing plaintiff's cafe and to erect a barrier around plaintiff's cafe, across which no member of defendant-unions or an affiliate will go.

"(21) That no violence attended the said picketing of plaintiff's cafe.

"(22) That defendants and each of them will continue to picket plaintiff's said cafe unless restrained by order of this Court.

"Conclusions of Law.

"(1) That plaintiff is engaged in a lawful enterprise in a lawful manner in the operation of his cafe and restaurant.

"(2) That the picketing at 418 Broadway constitutes an unlawful invasion of plaintiff's right to conduct a legitimate enterprise and an attempt to interfere illegally with plaintiff's right to contract with third parties.

"(3) That said picketing, being illegal and for an unlawful purpose, should be restrained."

Article 5152, Revised Statutes of 1925, provides that it shall be lawful for any and all persons engaged in any kind of work or labor to associate themselves together and to form trade unions and other organizations for the purpose of protecting themselves in their respective pursuits and employments.

Article 5153 provides that it shall be lawful for any member of such trade union or other organization to induce or to attempt to induce, by peaceful and lawful means, any person to accept any particular employment or to enter or refuse to enter or relinquish any employment or pursuit in which such person may be engaged, but that such member or members shall not have the right to invade or trespass upon the premises of another without the consent of the owner thereof.

Article 4642, Section 1, Revised Statutes of 1925, provides for injunctive relief "where the applicant is entitled to the relief demanded and such relief or any part thereof requires the restraint of some act prejudicial to him."

■ It is the established law in this state that where a case has been tried without a jury and there was ample evidence in the record to support the findings of the trial court, such findings have the same force and effect as a verdict of the jury on the facts found, and a reviewing court must affirm the trial court's judgment in the absence of other substantial error. O'Connell v. Johnson, Tex.Civ.App., 122 S.W.2d 649, error refused; New Amsterdam Casualty Co. v. First National Bank, Tex.Civ.App., 134 S.W.2d 470; Guerrero v. United States F. & G. Co.,Tex.Civ.App., 101 S.W.2d 592; 3 Tex.Jur. pp. 1104, 1125, 1143.

In the instant case there is not only no challenge by appellants of the facts on which the trial court based his judgment, but there was an agreement by the parties that the facts found by the court were the true facts of the case.

■ While our courts, in construing Articles 5152 to 5154, inclusive, which involve the rights and privileges of "Labor Organizations", have uniformly upheld their right to organize and have legalized the right of picketing with the limited objective of allowing striking employees who have a bona fide dispute with their employer, to induce, by peaceful and lawful means, any person to accept any particular employment or to enter or refuse to enter or relinquish any employment or pursuit in which such person may be engaged, a court of equity will, in proper cases affecting labor organizations, grant injunctions where relief is necessary for the preservation of a business or other property rights. Carter v. Bradshaw, Tex.Civ.App., 138 S.W.2d 187; Gibralter Savings & Building Ass'n et al v. Isbell et al., Tex.Civ.App., 101 S.W.2d 1029; Walker et al. v. Fort Worth Ins. Underwriters' Ass'n et al., Tex.Civ.App., 79 S.W.2d 661.

■ In this case the trial court based his judgment on the facts that there had been no bona fide labor dispute of any kind between appellee Ritter and his employees, all of whom were members of a union; that he had employed no carpenters or painters in his cafe, and that neither of appellant unions had any dispute with him concerning the conduct and operation of his cafe at 418 Broadway; that appellee had sustained a substantial loss in the earnings of said establishment in that its receipts were some 60% less during said picketing than theretofore; that his employees had quit his employ the day said picket line was established and that said picketing had made it impossible to have deliveries made thereto of foodstuffs and other necessary commodities by truck drivers who were members of other unions, and that the actions of appellants had prevented the members of all trades unions from patronizing his cafe and had in effect erected a barrier around it across which no member of appellant unions or any of their affiliates would go.

It follows that under the above authorities appellants' acts were prejudicial to the rights of appellees to such an extent as to authorize the intervention of a court of equity for the purpose of preserving such rights.

■ As stated by this court, speaking through Justice Graves, in the first appeal herein, Carpenters and Joiners Union et al. v. Ritter's Cafe, 138 S.W.2d 223, 227:

"* * * no right of free speech under the fundamental law of either nation or state is transcended by an injunction restraining the picketing of a place of business by persons (whether members of a labor organization or union, or not) who seek either to prevent the public from trading with the picketed place, or to compel its owner to break a contract which he has with some such disassociated third person." Carpenters and Joiners Union, etc. v. Ritter's Cafe, supra; Webb v. Cooks' Union, Tex.Civ.App., 205 S.W. 465; Cooks' Waiters' & Waitresses' Union v. Papageorge, Tex.Civ.App., 230 S.W. 1086; Texas Motion Picture and Vitaphone Operators, etc., v. Galveston Motion Picture Operators, Tex.Civ.App., 132 S.W.2d 299.

"'* * * The right of free speech is limited by the constitutional rights of others to acquire and possess property, an instance of which is the right to carry on a business in a lawful way. It has been said that it does not follow that because a single individual may under the constitutional guaranty freely speak and write as he pleases without injunctive restraint, an association or combination of persons may lawfully do likewise, as, in such cases, the views expressed are not merely those of the individual, but the express concerted will and desire of a powerful organization.'

See Oakes on Organized Labor, 1927 Ed., p. 884, section 880.

"These appellants have no legal grievance merely because the appellees refused to abrogate a private contract they had with W. A. Plaster to which the appellants were neither parties nor in privity; furthermore, they being such strangers thereto, but at the same time having full knowledge thereof, and of the business being conducted between themselves by the parties thereto, they, as such interlopers, not only would have laid themselves liable in damages to a party thereto for having knowingly induced a breach thereof, had that occurred as a result of their acts (Raymond v. Yarrington, 96 Tex. 443, 72 S.W. 580, 73 S.W. 800, 62 L.R.A. 962, 97 Am.St.Rep. 914, and Brown Hardware Co. v. Indiana Stove Works, 96 Tex. 453, 73 S.W. 800), but did in fact subject themselves to the power of a court of equity in this proceeding to protect the appellees against such an unwarranted interference with their peaceful contractual relationship with Mr. Plaster; especially so, since obviously no remedy at law could have been adequate, and irreparable injury would probably have resulted, had the interference been permitted to continue. Henke & Pillot v. Amalgamated Meat Cutters, [Tex.Civ.App.], 109 S.W.2d [1083], at page 1085, par. 3, and cited authorities."

A careful analysis of the authorities cited by appellants convinces us that the holdings relied on therein have no practical application to the facts in the instant case. It follows from these conclusions that the judgment of the trial court should be in all things affirmed; it will be so ordered.

Affirmed.

### On Motion for Rehearing.

In their motion for rehearing appellants contend that their original contentions have been upheld by decisions rendered by the Supreme Court of the United States in the cases of American Federation of Labor et al. v. Swing et al., 61 S.Ct. 568, 85 L.Ed. ——, and Milk Drivers Union of Chicago et al. v. Meadowmoor Dairies, Inc., 61 S. Ct. 552, 85 L.Ed. ——, both of which have been decided since our original opinion in this case was handed down.

From a careful analysis of the facts in each of the cases referred to, it is our conclusion that they do not require a reversal of our original opinion herein.

In the case of the American Federation of Labor v. Swing, the plaintiffs were Ross W. Swing, the owner of a beauty parlor, and his employees. Appellant union attempted to secure a contract with the owner, and, while he was willing for his employees to join the union, he declined to compel them to do so. Thereupon the union picketed his place of business. The Supreme Court of the State of Illinois granted an injunction restraining said picketing for the sole reason that there was no employer-employee dispute between Swing and his employees. 372 Ill. 91, 22 N.E.2d 857. In reversing the action of the Supreme Court of Illinois, the Court held that it would be improper to dispose of the case otherwise than on the face of the decree under review, which rested on the explicit avowal that peaceful persuasion was forbidden in that state because those who were enjoined were not in Swing's employ. The Supreme Court, speaking through Justice Frankfurter, said [61 S.Ct. 570, 85 L.Ed. ——]: "We are asked to sustain a decree which for purposes of this case asserts as the common law of a state that there can be no 'peaceful picketing or peaceful persuasion' in relation to any dispute between an employer and a trade union unless the employer's own employees are in controversy with him. Such a ban of free communication is inconsistent with the guarantee of freedom of speech.* * * The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ."

As we interpret the opinion, the Court held that, in the absence of criminal acts or other unlawful conduct under the statutes of a state, a union cannot be enjoined from picketing—in the manner there undertaken—the place of business of an employer with whom it is seeking to contract for its members.

In the case of Milk Drivers Union of Chicago v. Meadowmoor Dairies, Inc., the Supreme Court of the United States affirmed a judgment of the Illinois Supreme Court directing that a permanent injunction be issued restraining the picketing of the retail outlets of the Meadowmoor Dairies. 371 Ill. 377, 21 N.E.2d 308. The dairy sold its products to vendors, who in turn sold them to retail outlets. A labor dispute between the dairy and the union resulted in the retail stores, with whom the union had no labor dispute, being picketed. Certain acts of violence took place during the controversy although the pickets were

not guilty of acts of violence. The dairy sought an injunction restraining the picketing of said retail stores. The United States Supreme Court, in its opinion said [61 S. Ct. 554, 85 L.Ed ——]: "The question which thus emerges is whether a state can choose to authorize its courts to enjoin acts of picketing in themselves peaceful when they are enmeshed with contemporaneously violent conduct which is concededly outlawed. * * * But utterance in a context of violence can lose its significance as an appeal to reason and become part of an instrument of force. Such utterance was not meant to be sheltered by the Constitution. * * * A state may withdraw the injunction from labor controversies but no less certainly the Fourteenth Amendment does not make unconstitutional the use of the injunction as a means of restricting violence. We find nothing in the Fourteenth Amendment that prevents a state if it so chooses from placing confidence in a chancellor's decree and compels it to rely exclusively on a policeman's club. * * * We merely hold that in the circumstances of the record before us the injunction authorized by the supreme court of Illinois does not transgress its constitutional power. * * * But just as a state through its legislature may deal with specific circumstances menacing the peace by an appropriately drawn act, Thornhill v. Alabama, supra [310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093], so the law of a state may be fitted to a concrete situation through the authority given by the state to its courts. This is precisely the kind of situation which the Thornhill opinion excluded from its scope."

In effect, the court in this case held that, under the constitution, the right of free speech is not unlimited but that, under a proper state of facts, state courts are vested with authority to enjoin picketing by a labor organization in protecting the rights of its citizens where such picketing is "enmeshed" with violence or where it involves such conduct as the state is authorized to declare unlawful or the breach of such laws as are necessary for the protection and welfare of its residents.

Except in so far as their scope is limited by R.S. Articles 5152, 5153 and 5154, and Article 1643 of the Penal Code, R. S. Articles 7426 and 7428 and Articles 1632, 1634 and 1635 of the Penal Code, which prohibit any attempt to create restrictions in the free pursuit of any business or any agreement or threat to boycott a person or association by a refusal to buy from or sell to him or it and to induce others to do so, are in full force and effect in this state.

In the instant case, appellants directed a picketing campaign against appellee with whom the union had no labor dispute and with whom it neither wished, nor was eligible, to contract in any way, for the purpose of forcing a settlement of a dispute between appellant union and W. A. Plaster. The unchallenged findings of the trial court show that the revenues from appellee's business decreased approximately 60% while said picketing continued. Under the facts herein, the only relief available to appellee is through a court of equity.

While the Supreme Court of the United States in the case of Milk Drivers Union of Chicago v. Meadowmoor Dairies, Inc., supra, held that picketing would be enjoined when enmeshed with violent conduct, it quoted with approval from its opinion in the case of Carlson v. People of State of California, 310 U.S. 106, 60 S.Ct. 746, 749, 84 L.Ed. 1104, in which it is said: "The power and the duty of the State to take adequate steps to preserve the peace and protect the privacy, the lives, and the property of its residents cannot be doubted."

█ It follows, we think, with equal force, that the Fourteenth Amendment of the Federal Constitution does not make unconstitutional the use of an injunction as a means of preventing the violation of the Texas anti-trust laws, Articles 1632 et seq., the constitutionality of which have recently been sustained by the Supreme Court of the United States in the case of Tigner v. State of Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124, 130 A.L.R. 1321, in an opinion handed down by Justice Frankfurter on May 6, 1940.

Appellants' motion for rehearing is overruled.

Overruled.

CODY, Justice (concurring).

I concur in the refusal of the motion for rehearing. I base my concurrence, however, upon the view that the constitutional right of free speech cannot be used to implement a boycott. The undisputed facts in this case disclosed a boycott.