**INTERNATIONAL UNION OF OPERAT-
ING ENGINEERS, LOCAL NO. 564, et
al. v. COX.**

**No. 11984.**

Court of Civil Appeals of Texas. Galveston.
June 10, 1948.

Rehearing Denied July 15, 1948.

Mullinax, Wells & Ball, of Dallas, and
Robert M. Lyles, of Angleton, for appel-
lants.

Irving G. Mulitz and Frank F. Spata,
both of Houston, for appellee.

GRAVES, Justice.

This appeal is from a judgment of the
23rd District Court of Brazoria County,
sitting without a jury, in favor of the ap-
pellee, who was the plaintiff below, and
against the appellants as defendants there,
which, in material substance, was this:

"It is * * * Decreed that Interna-
tional Union of Operating Engineers Lo-
cal No. 564, of Freeport, Brazoria County,
Texas; George Williams, individually, and
in his capacity as Business Representative
of Local No. 564; Pricilla M. McCaffety;
Ethel Sifford; Anna May Williams; Lu-
cille Duggar, and Nannie Day, all residents
of Brazoria County, Texas, together with
all representatives, agents, and officers of
said International Union of Operating En-
gineers Local No. 564, and each of their
agents and servants, be, and here now are
enjoined * * * from picketing or caus-
ing to be picketed the premises and busi-
ness establishment of plaintiff, R. G. Cox,
known as Velasco Laundry & Cleaners,
and from congregating or assembling in
the vicinity thereof, upon plaintiff exe-
cuting a bond in the sum of * * * $2,-
000.00 in favor of the defendants, condi-
tioned as the law requires.

"And, it is further * * * Decreed
that plaintiff, R. G. Cox, doing business as
Velasco Laundry & Cleaners, do have and
recover of and from the defendants, joint-
ly and severally, * * * the sum of Five
Hundred ($500.00) Dollars. * * *"

In this Court the appellants are the La-
bor Union and the six individuals so sever-
ally named in the quoted decree, while the

appellee is the owner and operator of the laundry affected.

No findings-of-fact or conclusions-of-law, as such, were either requested or filed below, hence the cause is before this Court upon the transcript, the statement-of-facts, and the briefs of the parties.

The judgment thus rendered was a final one, granting a permanent injunction, with the stated allowance for damages, and was handed down on December 19, of 1947, thereby arresting or stopping a "picketing" of the appellee's laundry at Velasco the court found the appellants were then conducting.

In the appeal here, the appellants have declared-upon these five points-of-error:

"1. A labor dispute exists between appellants and appellee.

"2. Picketing of appellee's premises is privileged under the free speech guarantees of the constitutions of Texas and the United States.

"3. Article 5154f, Revised Civil Statutes of Texas [Vernon's Ann.Civ.St. Art. 5154f], is unconstitutional insofar as it is basis for the injunction herein.

"4. The district court had no jurisdiction to apply the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq., since injunctive relief thereunder can be obtained only through the National Labor Relations Board.

"5. The district court erred in assessing damages."

At the very outset, it is determined that—in the binding condition upon it of the record brought here by the appellants—none of these contentions can be sustained; this, for the overall reason that they have therein completely failed to substantiate for any such prayed-for adjudications in their favor, the essential factual basis for any one of such claimed-rights.

■ As recited, the trial was before the court without a jury, which was neither requested to, nor did it file findings of either fact or law. Wherefore, the presumption here is that the judgment below was grounded-upon all the findings that are necessary to support it as rendered, that could be inferred from the evidence in the record. Gribble v. Call, Tex.Civ. App., 123 S.W.2d 711; Southern Union Life & Casualty Company v. McKinney, Tex.Civ.App., 146 S.W.2d 1103; Zenith Corporation v. Cook Operating Company, Tex.Civ.App., 142 S.W.2d 548.

The appellee's bill for the injunction so awarded him had alleged that the appellant-Union, its named business representative, and the other individual appellants enumerated, had conspired to destroy his business, had placed a picket-line at his laundry-plant at Velasco to accomplish that purpose, when there was, in fact, (1) no bona fide labor-dispute then in existence between himself and any of the appellants, (2) that none of the individual appellants were then his employees, and finally, (3) that neither such Local No. 564, nor any of its agents, officers, or employees, nor any of the other appellants, had at that time been the bargaining-agent for all of appellee's employees; he added (4) that no employee of his was at that time on strike against him or his plant; wherefore, he averred, such picketing by all the appellants against his laundry-plant was in direct violation of the law, both of the State of Texas, and of the United States.

■ This Court has carefully examined the statement-of-facts so brought here, with the result that it finds there was testimony—despite some to the contrary—before the trial court sufficient to have justified its finding in favor of the appellee, not only of all the facts so plead by him in support of the injunction the court awarded in response thereto, but also of others now added; so that, a recapitulation of all the controlling ones may be thus made:

(1) That there was no labor-dispute then pending between any one of the appellants and the appellee; (2) That none of the individual appellants was at that time an employee of the appellee; (3) That neither the appellant-Local, nor any of its agents, officers, or employees, had been chosen as the bargaining-agent for all of the employees of the appellee; (4) That, to the contrary of appellants' presentments, it had

(a) agreed with the appellee that it would apply to the National Labor Relations Board for permission to hold an election to determine whether or not appellee's employees should join the appellant-Union; but (b) soon thereafter, without notice to the appellee, and after the Labor Relations Board had, instead of granting such petition, declined so to do, with the advice to the appellant-Union that it questioned its own jurisdiction in the matter, the Union then withdrew its application for such election, and upon the next day instituted, joined by the other appellants, the stated-picketing of appellee's laundry; (5) That, along-with, and in instituting such picketing, the appellant-Union—through its business-agent, George Williams—issued and distributed to the public—especially in the vicinity of the appellee's laundry—this printed-declaration, which is appended hereto as "Exhibit A"; (6) That none of the defamatory statements in such printed-declaration about the appellee and his treatment of his employees was true.

Indeed, as this Court reads the record, such preparation, distribution, and use of the quoted-statement, which appears as "Exhibit I" in the statement-of-facts, was admitted by such business-agent himself upon the witness stand.

The statement-of-facts further discloses that the trial court heard full evidence from both sides as to all the conditions attending the "picketing" indicated, inclusive of the effect upon the condition and volume of the appellee's business as the result of such picketing, which was found to have quickly injured, damaged, and reduced not only the volume of the business, but also the profits therein, to the point of threatening the destruction of the fabric of the business itself; and that, the judgment rendered was only so entered after the receipt of the testimony indicated.

Bound as it is by the facts so presumed to have attended such "picketing", as indicated, this Court is not only unable to hold that appellant-Union brought itself within the rules of law permitting a peaceful picketing, which are well settled—especially in Texas—but is further compelled to determine that the trial court could have

properly done nothing else than issue the injunction it did.

For this reason also, it is determined that appellant, in consequence of such a lack of a supporting factual-basis, was not legally aggrieved by the alleged violation of, or the claimed invalidity in, any of the statutes or constitutional provisions, State or Federal, it so grounds its points-of-error herein upon.

It is further held that, on the body of the facts so found, all of which had support in the testimony, that this cause fell, first as to the injunction stopping the picketing, within the law of Texas as heretofore declared in the two cases of Borden Co. v. Local No. 133, of International Brotherhood of Teamsters etc., Tex.Civ.App., 152 S.W.2d 828, writ of error denied; and Carpenters and Joiners Union of America etc., v. Ritter's Cafe, Tex.Civ.App., 138 S.W.2d 223; Id., Tex.Civ.App., 149 S.W.2d 694, writ of error denied, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143.

As these citations show, the Ritter case was affirmed by the Supreme Court of the United States, on the same day that it also passed upon the Wohl case—that is, Bakery, etc., Local 802 v. Wohl, to-wit, on March 30 of 1942, which appellant invokes in support of its claims herein. While the Ritter decision was by a divided Court, whereas the Wohl one was graced by only the addition of a concurring opinion by 3 of the Justices, (Bakery and Pastry Drivers and Helpers Local 802 etc. v. Wohl, 315 U.S. 769, 62 S.Ct., 816, 86 L.Ed. 1178), the Court officially did not determine that any conflict existed between those two causes; indeed, in the dissenting opinion of Justice Reed himself in the Ritter case, at page 815, bottom of Column 1 and top of Column 2, of 62 S.Ct., this is declared:

" * * * We do not doubt the right of the state to impose not only some but many restrictions upon peaceful picketing. Reasonable numbers, quietness, truthful placards, open ingress and egress, suitable hours or other proper limitations, not destructive of the right to tell of labor difficulties, may be required. * * *"

■ Wherefore, in any event, since the quoted "placard" so used by the appellants

in this case was untruthful, as under the testimony herein, the trial court is conclusively presumed to have found, this injunction would have been properly granted on that ground alone. Neither, finally, is there any lack of legal support, on the findings indicated, for the small $500.00-judgment as damages for loss of profits and shrinkage in the values of his property by the appellee, as the direct result of such unjustified picketing. This question, and the right to such damages, was disposed of favorably to the trial court's action here by the Supreme Court in Southwest Battery Corporation v. Owen, 131 Tex. 423, 115 S.W.2d 1097, 1098. Appellee's business here was shown to have been a going concern and making profits at the time when the "picketing" by appellants was visited upon it, causing the loss and damages the trial court allowed the comparatively small recovery for.

These conclusions require an affirmance of the judgment. It will be so ordered.

Affirmed.

### Exhibit A

"That The Public May Know The Facts

"Local Union #564 Operating Engineer's, did not instigate the present labor dispute between the Velasco Laundry and its present employee's.

"Conditions became so unbearable the employee's ask us to become their bargaining agent. After listening to their statements, and investigating same, we consented to endeavor to alleviate their deplorable working conditions.

"The local management of the Velasco Laundry, learned of the activity of the Laundry workers, and immediately discharged a number of said employee's. This fact was admitted before the executive board of Local Union #564 of the Operating Engineers, by the local management of the Velasco Laundry.

"Conditions exist in the Velasco Laundry, which we believe are a disgrace to a community priding its self on its high standard of living and morals.

"It has been ascertained, by statements signed by employee's of the laundry, that they draw very low wages. A number of them drawing 35¢ per hour. They are verbally abused, have no job security, nor recourse of any kind. They have on occasion had their wages reduced without notice or consent, been subjected to the indignity of profane and abusive language, and been fired with no explanation whatsoever.

"A large majority of these employee's are women, many of whom have no other means of support. Their ages ranging from Eighteen to Fifty-Five. Many of them are wives, daughters, mothers, or widows of war veterans.

"These people are now attempting to gain recognition as a unit from the management, to try and improve their condition, which to say the least is deplorable. That the management is resisting this endeavor, goes without saying.

"Perhaps the most conspicious example, of unfairness, is the case of a Fifty-Four year old widow, and mother of a world war veteran, whose sole support is her own endeavor, being subjected to abusive and profane criticism for the amount of work she had turned out. This woman started to work at 25¢ per hour, and was later raised to 47½¢ per hour, after having signed an authorization card, designating Local No. 564 Operating Engineers, as her bargaining agent, her wages were reduced to 35¢ per hour without notice or consent.

"Has your laundry prices been reduced?"