## COMMONWEALTH *vs.* MICHAEL KILLIAN.

An indictment on the Gen. Sts. § 63, § 107, for obstructing a railroad train and endangering the safety of the passengers, cannot be maintained against a passenger, who, from whatever motive, pulled a signal rope attached to a bell upon the engine, and thereby caused the train to be stopped and the safety of the passengers to be endangered.

INDICTMENT on the Gen. Sts. *c.* 63, § 107, averring that the defendant at West Roxbury in the county of Norfolk, on September 18, 1871, with force and arms, " feloniously, wilfully and maliciously the engine and carriages of the property of the Boston and Providence Railroad Corporation, then and there lawfully passing over and along the railroad of said corporation, there located and situate, did obstruct, by then and there pulling the signal rope attached to and connected with the bell in and upon the said engine, by reason whereof the said engine and carriages were then and there caused to be stopped, hindered and delayed, and the safety of divers persons then and there lawfully riding, passing and being conveyed on and upon said railroad, at West Roxbury aforesaid, in the county aforesaid, in and upon the engine and carriages aforesaid, then and there did endanger," against the peace of the Commonwealth and contrary to the form of the statute. In the superior court, before the jury were empanelled

the defendant moved to quash the indictment "because it does not set forth any offence known to the laws of this Commonwealth according to the laws thereof," and "because it is informal and insufficient;" and the motion was overruled.

At the trial, before *Scudder*, J., "evidence was introduced for the prosecution as follows.: The conductor of the train leaving Boston for Dedham at half past six o'clock in the afternoon of September 18, 1871, testified that between the Boylston and Jamaica Plain stations he noticed that the bell-rope was pulled, the whistle sounded and the train stopped; that he went through the train to learn who pulled the rope, and found on the rear platform of the rear car the defendant, who was pointed out to him as 'the boy who pulled the bell-rope;' that he had a conversation with the defendant as to who pulled the bell-rope; and that the defendant said he did not know who it was, but that the man who pulled it had just jumped off. The conductor further testified that an express freight train, going in the same direction and on the same rails with his train, was due to start from Boston at twenty minutes of seven o'clock; that his train was about two minutes late in starting from Boston, and was delayed, when stopped as above stated, about five minutes; and that he sent back a man to 'flag' said freight train behind him, to avoid the danger of collision. Three other witnesses testified to the pulling of the bell-rope by the defendant, and to the stopping of the train. Both the conductor and the engineer testified that the pulling of the bell-rope on the train, and the ringing of the engine bell thereby, was the only danger-signal in use, and was notice to the engineer to whistle 'down brakes' and stop the train, as was done in this case. It was also in evidence that the defendant did not get off when the train stopped, and that he had paid his fare to the Forest Hill station, which was the second station beyond the point where the train was then stopped. It appeared further that the defendant was warned by a fellow passenger not to pull the bell-rope, and that he told the passenger to 'shut up.'"

The defendant offered no evidence in his own behalf, but requested the judge to instruct the jury "that no crime had been

proved against him by the evidence ; that the evidence was not sufficient to warrant a verdict against him ; and that no crime or offence known to the laws of this Commonwealth had been proved against him." But the judge declined so to rule, and instructed the jury " that, if they found that the defendant pulled the bell rope of the train as alleged in the indictment, that was an obstruction within the meaning and intent of the statute." The jury returned a verdict of guilty, and the defendant alleged exceptions.

*J. O. Teele,* for the defendant.

*C. R. Train,* Attorney General, for the Commonwealth.

COLT, J. Punishment is provided by the Gen. Sts. *c.* 63, § 107, for whoever " obstructs any engine or carriage passing upon a railroad, or endangers the safety of persons conveyed in or upon the same, or aids or assists therein." The defendant is indicted for obstructing a train of cars by pulling the signal rope attached to a bell upon the engine, whereby the train was stopped and the safety of passengers endangered. There was evidence at the trial, that the defendant was a passenger at the time of committing the offence charged, and that pulling the bell-rope was ordinarily used as a danger signal, and as notice to the engineer to stop the train. In the opinion of a majority of the court, this evidence fails to prove a criminal obstruction of the train, within the reasonable meaning of the statute. ·

The law was not intended to apply to a case where the train is stopped by an engineer, or other person having control, in consequence of a false signal communicated in this manner by a passenger. That is a proper and a contemplated mode of stopping the train, to be used in case of accident or necessity, not only by officers in charge, but by passengers ; and the act, however improper, and whatever may be its motive, cannot be regarded as ordinarily or directly dangerous to any one. If the terms of the statute do not imply an actual physical obstruction, they at least require something more than the use of the agencies here employed.

The case of *The Queen* v. *Hadfield,* Law Rep. 1 C. C. 252, relied upon by the government, was under the English St. of 24 &

25 Vict. *c.* 97, §§ 35, 36. The prisoner unlawfully altered some railway signals at a railway station. The alteration caused a train, which would have passed the station without slackening speed, to slacken speed and to come to nearly a stand; and another train going in the same direction and on the same rails was due at the station in half an hour. This was held by a divided court to be an obstruction within the meaning of § 36, which enacts that whosoever by any unlawful act, &c., obstructs any engine or carriage using any railway, shall be guilty of a misdemeanor. But § 35 of the same statute makes it felony to obstruct a train by certain unlawful acts there named, including the altering of signals, and it was thought that the acts specified were intended to be also included in § 36 by the phrase "any unlawful acts." The interpretation of our statute is not thus aided and it cannot be thus enlarged.                    *Exceptions sustained.*