TOMLIN *v.* WILLIAMS.

4-8717                                                   217 S. W. 2d 832

Opinion delivered February 7, 1949.

Rehearing denied March 14, 1949.

*T. J. Gentry,* for appellant.

*J. Bruce Streett, Moore, Burrow, Chowning & Mitchell,* for appellee.

GRIFFIN SMITH, Chief Justice. J. M. Williams and others, partners, are manufacturers doing business as

Williams Roofing Company, near Camden. Prior to the controversy resulting in this litigation employees were members of White City Local 538, International Brotherhood of Paper Makers, an American Federation of Labor affiliate. When the Union's contract expired it could not agree with Williams on wages and working conditions. A strike was followed by withdrawal of most of the 125 workers, with establishment of picket lines. After initial measures had been taken by the Union to make the strike effective, (characterized by two isolated instances of disorder) the Company procured an injunction. Result was to limit picketing to the plant's principal entrance. Some of the restrictions are shown in the margin.[1]

Stripped of collateral trivialities, the controversy is referable to the Union's assertion that it cannot effectively picket the plant without placing men at a gateway through which railroad cars move—some in interstate commerce. The Company says that if this opening is made available to the strikers the plant (now operating independently) will be closed when Railway Brotherhood members refuse to cross the picket line.

In granting a temporary injunction the Chancellor sought to preserve order, and his clear intent in making the restrictions permanent was to afford the Union reasonable facilities for public expression while preserving to the Company its property rights. It is now urged by the beneficiary that because an appreciable number of its former employees are working and have expressed satisfaction, and because the plant is producing in spite

---

[1] Decree in part: "Under the Court's interpretation and definition of limited and peaceful picketing, the defendants may maintain a picket line or patrol of not over three men at the main gate, except during change in shifts of said pickets, which shift shall not take over 15 minutes and shall not be made nearer than 100 feet from the main gate. Said pickets may display such placards or banners as may be reasonably necessary to advise and acquaint the public with the fact that they are on strike, and with their claims as to the cause thereof. Said pickets shall keep moving and shall not in any manner obstruct said gate or the roadway leading into same, and they shall not stop or molest any person entering or leaving the plant of plaintiffs; but the picket may request such person or persons, in a friendly and courteous manner, not to cross the picket line. The defendants are expressly enjoined from picketing or patrolling the railroad gates entering plaintiff's plant."

of organized effort to interfere, the Union ought not be allowed to extend its picket line to the one entrance where presence of its patrols would cause harm.

Picketing, when peaceful, must be measured in the light of the right itself, as distinguished from a suggested result. It may be that in a particular case, as here, full exercise of the right may be attended by disproportionate hardships to the adverse side. That, however, is an incidental circumstance showing a purely local advantage that cannot be made the basis of a legal exception. Courts do not possess power to exclude if the prescript is of a general nature.

The Williams plant is quite large. Pickets at the main gate would not be in communication, by normal methods, with others remotely placed. Effect of applicable Court opinions is that, under the Fourteentk Amendment to the Federal Constitution, freedom oi speech attains the dignity of permissible utterance. I is this quality that must not be treated as mere licens€ subject to restraint.

In their brief appellants say: "We do not claim . . . . the right . . . to blockade the gates to the plant by mass picketing, or to otherwise prevent free ingress and egress thereto."

Appellees say: "It is true, and the record discloses, that no serious acts of violence were committed by the Union. On the contrary, testimony shows that the strikers were cautioned and advised by their local officials and international representatives to avoid any acts of violence prohibited by the State statutes or the prevailing Federal legislation on labor relations."

The two statements show that a single issue is involved: whether the restriction to three pickets at the main gate is unreasonable. In the light of judicial precedent that we are not at liberty to disregard, the answer must be adverse to the decree. But, since appellants only ask the right to picket the railroad gate, modification goes only to that phase of the injunction. As rewritten the injunction should permit pickets at the

point in controversy if this can be done without intruding upon appellees' property and without trespassing upon property of others.