GENERAL DRIVERS, WAREHOUSEMEN AND HELPERS, LOCAL UNION 745 et al. v. DALLAS COUNTY CONST. EMPLOYERS' ASS'N et al.

No. 14474.

Court of Civil Appeals of Texas. Dallas.

Dec. 14, 1951.

Rehearing Denied Jan. 25, 1952.

Second Motion for Rehearing Denied Feb. 22, 1952.

---

Mullinax, Wells & Ball and Marion C. Ladwig, all of Dallas, for appellants.

Locke, Locke & Purnell, Stanley Neely, and Clark, Coon, Holt & Fisher, and Harold Hoffman, all of Dallas, for appellees.

CRAMER, Justice.

This is an appeal from an order granting a temporary injunction in favor of appellees, enjoining appellants from picketing certain concrete mixer trucks at, on or near, in or about the premises where appellees are constructing buildings, and from picketing on or near Concrete Haulers, Inc., trucks in or about building construction sites where appellees may be performing work; also from picketing on, near or about the premises and places of business of appellees and from establishing and maintaining ambulatory pickets to follow or accompany any of Concrete Haulers, Inc., concrete mixer trucks while operating in the usual course of business in the delivery of ready-mixed concrete to appellees' job sites. The injunction excepted from the force of the order appellants' right to picket the places of business of the concrete concerns with which appellees are found to be in a bona fide labor dispute and also the place where the concrete mix trucks are stored when not on the public street.

Appellants brief but one point, to wit: "The injunction is void since it deprives appellants of the right of free speech guaranteed by the Constitution of Texas and the United States."

Appellees brief seven counterpoints, in substance that the picketing constituted, (1) a boycott; (2) a secondary picketing; (3) that appellants' right of free speech was protected by the limitation placed in

the judgment; (4) that no constitutional right of free speech protects the picketing enjoined; (5) that the findings of the trial court of no conspiracy to boycott appellees was without support in the evidence; (6) as was the finding that the acts and conduct of appellants did not violate the Anti-Trust Laws of Texas; (7) that the trial court was justified in granting the temporary injunction because of appellants' conspiracy for the purpose of limiting production, transportation, use, and consumption of concrete transported by Concrete Haulers, Inc., and formed an illegal conspiracy in restraint of trade in violation of the Anti-Trust Laws of Texas.

The parties stipulated that a labor dispute existed between appellants and Concrete Haulers, Inc., not a party to this suit; that no labor dispute existed between appellant union and its members and appellees, who were customers of Wamix, Inc., and Red-D-Mix Corporation.

The record shows that appellees are engaged in the commercial construction business, both as contractors and as subcontractors; and as such, among other building materials, at times use a ready-mixed concrete which is delivered to them on their jobs by trucks owned by Concrete Haulers, Inc., who receive such ready-mixed concrete from Red-D-Mix Corporation and Wamix, Inc., separate corporations, and transport such ready-mixed concrete in special trucks from the place where received to the places of business of appellees and other members of the appellee association; such trucks having a drum thereon into which the concrete is placed or poured, which drum continually rotates after being filled and while the truck is in transit from the place where it is received to the point where it is delivered to appellees on the job for use. The appellants are the employees of Concrete Haulers, Inc., who are on strike for the purpose of persuading their employer to unionize their truck drivers in the union in which they are members; and at the times in question the appellant employees were picketing their employers at their fixed place of business, and, in addition, placed ambulatory pickets in automobiles who followed the concrete delivery "drum trucks" from the places where they loaded, then along public streets where delivery was to be made, then getting out of their automobiles and picketing upon the public streets and sidewalk around said trucks, which point was adjacent to the property on which the trucks made delivery. The signs used by the pickets for such purpose were as follows: "Concrete Haulers, Inc. The Corporation which owns and operates this truck is Unfair to its employees and their union. Please Do Not Use This Concrete. We are picketing only this truck. Teamster's L.U. No. 745—A.F. of L."

On a few occasions the pickets followed the trucks on to the job sites but always left the private property on request.

At some of the job sites union members who worked for appellees honored the banners of the pickets and would not work with or use the concrete delivered in such trucks, causing temporary stoppage of the work on the jobs they were employed upon, and damage in varying amounts to appellees.

The trial court found that the union men who quit work and walked off the jobs of appellees, or who refused to use the concrete delivered by Concrete Haulers, Inc., trucks, did so individually and of their own free will and volition, and not because of any agreement or conspiracy between them and their union or between them and appellants, and that there was no conspiracy to boycott appellees and no violation of the Anti-Trust statutes of Texas; further that the location of the plants of Wamix, Inc., and Red-D-Mix Corporation, and the place of the storage of such trucks of Concrete Haulers, Inc., in the metropolitan area of Dallas, afford ample opportunity for the union and other appellants to picket, etc., and make known to the public their labor dispute with Concrete Haulers, Inc.; that none of the appellees owned any interest, financially or otherwise, nor did they have any connection with Wamix, Inc., Red-D-Mix Corporation, or Concrete Haulers, Inc. The trial court found that appellants would continue such picketing against appellees if not restrained by the court and that such picketing constituted a secondary picket-

ing and secondary boycotting for purposes prohibited by statute; that such conduct was unlawful and a temporary injunction should be issued.

As we view the record, the material questions on the trial on the merits are whether ambulatory picketing is a proper exercise of the constitutional guaranty of free speech, and, if so, whether the manner in which appellants conducted such ambulatory picketing would or would not come within a proper exercise of such rights.

But such are not the questions here. Appellate Courts will not disturb the exercise of a proper discretion by the trial judge in granting a temporary injunction to preserve the status quo unless the trial court abused such discretion. Nor will they determine, upon an appeal from an order granting a temporary injunction, an unsettled question of law or fact. Only where the record shows a clear and positive abuse of discretion by the trial court in passing on settled questions of law as applied to undisputed facts, will the Appellate Court disturb the trial court's exercise of his discretion in passing upon a question of whether justice to all parties will be best served by granting temporary relief against changing the last settled status of the parties. Texas Digest, Vol. 4, Part 1, Appeal and Error, subds. (1), (3) and (4).

The trial court's discretion, however, does not extend to an erroneous application of settled law to undisputed facts. Southland Life Ins. Co. v. Egan, 126 Tex. 160, 86 S.W.2d 722; 4 Texas Digest, Appeal and Error,

The case before us was filed by third persons, not interested in the bona fide labor dispute between the union and the employers of its members. They alleged and introduced evidence of injury by reason of the union's lawful picketing of the trucks of a third party, the employer of such picketing union members.

Appellants cite the case of Hughes v. Superior Court, 339 U.S. 460, 70 S.Ct. 718, 721, 94 L.Ed. 985. In that case Justice Frankfurter said: "However general or loose the language of opinions, the specific situations have controlled decision. It has been amply recognized that picketing, not being the equivalent of speech as a matter of fact, is not its inevitable legal equivalent. Picketing is not beyond the control of a State if the manner in which picketing is conducted or the purpose which it seeks to effectuate gives ground for its disallowance." See comment thereon in 30 Texas Law Review, p. 206, No. 2, December 1951, published since this case was briefed and submitted.

Appellants also cite Turner v. Zanes, Tex.Civ.App., 206 S.W.2d 144, and assert that Ex parte Henry, 147 Tex. 315, 215 S.W.2d 588, did not modify or overrule the Zanes case. In 30 Texas Law Review (cited above), at p. 222, there is a comment in connection with the Henry and Zanes cases which reads as follows: "In reaching its result in the Henry case the court had to consider the case of Turner v. Zanes, which it had earlier refused to review on the ground that there was 'no reversible error.' The Zanes case had established the proposition that, while a business engaged in a labor dispute could be picketed by the employee disputants, the picketing could not extend across the transportation access to the plant. After the Texas Supreme Court had refused to review this case, some trial courts in Texas had followed the principle of Turner v. Zanes. In Ex parte Henry, the Texas Supreme Court overruled this aspect of the Zanes case. It should be noted that factually the Henry case is closely related to the International Rice Milling case (National Labor Relations Board v. International Rice Milling Co., 341 U.S. 665, 71 S.Ct. 961, 95 L.Ed. 1277) recently decided by the United States Supreme Court and discussed above. As previously stated, there seems to be no justification in the cases for a holding that while picketing is constitutionally privileged it cannot be used to persuade persons to refrain from crossing the picket line and entering the business establishment being picketed. So to hold would be closely analogous to paying only lip service to free speech by permitting

the speech but forbidding anyone to listen to it. Ex parte Henry laid the ghost of this abortive Texas picketing doctrine."

So far as we have been able to find, the question of whether or not the picketing of trucks, away from the fixed place of business, for the purpose of advertising a labor dispute, carried out in such a manner that union men, working on independent jobs for employers who have no labor dispute with such pickets, or their union, would refuse to use the contents of the trucks, to the financial injury of their employers (third parties to the labor dispute), has never been directly or inferentially passed upon by any court.

■ Therefore in view of the present status of the decisions, neither the facts, nor the law on the matters herein in issue have been settled with such certainty as to justify us in holding that the trial court abused his discretion in granting the temporary injunction here appealed from.

An early trial on the merits should be had to settle such issues, and if such early trial is not accorded either party on request, appellants are fully protected by our statute, Art. 1824, Vernon's Ann.Civ.St.

For the reasons stated, other questions presented becoming immaterial, the judgment of the trial court is

Affirmed.

### On Motion for Rehearing.

CRAMER, Justice.

Our CHIEF JUSTICE has dissented on rehearing in this case, among other things stating that appellants are entitled to a final decision *now*. In such dissenting opinion he has failed to make a necessary distinction to a proper decision in this case, to wit: A distinction between a legal ambulatory picketing and an illegal secondary picketing constituting a secondary boycott under our Anti-Trust statutes. In the present suit the employer against whom the union was striking is not a party to the suit. The present suit was filed and prosecuted by customers of the employer, innocent third parties who have no labor dispute with the union. Such plaintiffs in this suit alleged and proved that union men working for them and with whom they had no labor dispute, refused to work with the concrete purchased from the employer of the striking union members.

In our opinion such facts give rise to a right for, not only the temporary injunction granted, but, if the facts are the same on a final hearing, a permanent injunction.

■■ As between the appellants and appellees, the actions of appellants' pickets created and effected a secondary boycott under Art. 5154f, Vernon's Ann.Civ.St. We are further of the opinion that Art. 5154f, supra, in so far as the questions here are concerned, is constitutional.

Being of the opinion that our former disposition of the case was correct, motion for rehearing is overruled.

BOND, C. J., dissents.

BOND, Chief Justice (dissenting).

On original submission I voiced my dissent; on motion for rehearing, careful and thoughtful consideration has been given to the ultimate question involved, that is, whether or not a "temporary" injunction may be granted to restrain appellants from the exercise of a constitutional right of ambulatory picketing in a bona fide labor dispute. The question is one of law; there exists no right vested in the trial court to exercise discretion. There is no "balancing of equities" for determination as to whether appellants have the right to exercise their constitutional rights; and there is not before this Court "a question of whether justice to all parties will be best served by granting temporary relief against changing the last settled status of the parties." (246 S.W.2d 680.) Rather the question is whether the appellants have a constitutional right as guaranteed to them in advertisement of their dispute by peaceful picketing. In my opinion no court has the power to deprive one of his constitutional right of "free speech"; and no element of discretion is present to be exercised in the termination of this question. The order of temporary restraint appealed from is constitutionally void. Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430.

My conception of the function of courts is to protect by all means at their command the lawful pursuits of every citizen. Courts have no right to interfere; but it is of paramount importance that courts predicate their action on the fundamental premise, which has served as a cornerstone of the edifice on which the strength of this government has been tested since its inception, to exhaust the resources of the State in defense of the constitutional rights of its humblest citizen. In the case at bar there is not any evidence in dispute, as would deprive the appellants of their constitutional right to engage in advertisement of their grievances with their employers with whom they were engaged. Peaceful ambulatory picketing may not be limited to the "place of business" of their employer, and likewise at the site where the concrete-mix trucks are stored over night,—manifestly not proper places for the object of their picketing, to dissemminate information and opinion.

In the case of Ex parte Henry et al., 147 Tex. 315, 215 S.W.2d 588, 596, Mr. Justice Smedley, speaking for the Supreme Court, said that the injunction, as here, is void in so far as it attempts to limit picketing to take place at the scene of labor dispute, that is, the premises of the employer. "Since the right to picket existed under the facts of this case and under the decisions of our highest court, we hold that the right extended to all portions of Pickett Street adjacent to, and in the vicinity of, the plant of the Cotton Oil Mill Company with which relators and their union were in dispute." Citing with approval two cases, which the court said "squarely in point". Carlson v. People of State of California, 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104; Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093.

In the above Carlson case the right of picketing was upheld on facts similar as here, where the picketing was peaceful on a public street. The U. S. Supreme Court said [310 U.S. 106, 60 S.Ct. 749] : "For the reasons set forth in our opinion in Thornhill v. Alabama, supra, publicizing the facts of a labor dispute in a peaceful way through appropriate means, whether by pamphlet, by word of mouth or by banner, must now be regarded as within that liberty of communication which is secured to every person by the Fourteenth Amendment against abridgment by a state."

In the Thornhill case a similar situation as in the Carlson case and the Henry case, supra, relates that Thornhill violated a statute in the State of Alabama by picketing on a public street. After noting that Thornhill's picketing was peaceful and free of harsh words or menacing manner, and such picketing sought to be prohibited was merely because it had for its purpose to advise customers of the dispute between employees and employers, and thereby induce them not to patronize the employers, the Supreme Court said [310 U.S. 88, 60 S.Ct. 746] : "[The] streets are natural and proper places for the dissemination of information and opinion; and one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." This pronouncement is followed by our Texas Supreme Court in the Henry case, supra.

Again, in both the Thornhill and Henry cases, the "exercise of discretion" and "balancing of equities" by a court of equity were specifically rejected. The Court said: "It may be that effective exercise of the means of advancing public knowledge may persuade some of those reached to refrain from entering into advantageous relations with the business establishment which is the scene of the dispute. Every expression of opinion on matters that are important has the potentiality of inducing action in the interests of one rather than another group in society. But the group in power at any moment may not impose penal sanctions on peaceful and truthful discussion of matters of public interest merely on a showing that others may thereby be persuaded to take action inconsistent with its interests."

In the case of International Union of Operating Engineers v. Cox, 219 S.W.2d 787, 794, the Texas Supreme Court again holds, where picketing is lawful and "the damages, if any, resulted from the exercise of lawful and constitutionally guaranteed rights, they are damnum absque injuria, * * *."

In line with the holding of the aforesaid cases, the U. S. Supreme Court has set at rest that ambulatory picketing is protected by the Constitution—the picketing is lawful and should not be enjoined. In Bakery and Pastry Drivers Helpers Local 802 v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 818, 86 L. Ed. 1178, where pickets "followed Platzman as he was distributing his products and called on two or three of his customers, advising them (of the dispute)", the U. S. Supreme Court said: " * * * respondents' mobility and their insulation from the public as middlemen (as the case at bar) made it practically impossible for petitioners to make known their legitimate grievances to the public whose patronage was sustaining the peddler system except by the means here employed and contemplated". Such picketing was constitutionally protected and could not be enjoined.

Ambulatory picketing is further upheld by the Ohio Court of Appeals in W. E. Anderson Sons Co. v. Local Union No. 311, Teamsters Union, etc., 94 N.E.2d 633, and in N.L.R.B. v. Service Trade Chauffeurs, etc., 2 Cir., 1951, 191 F.2d 65. See also Ex parte Henry, 147 Tex. 315, 215 S.W.2d 588; International Brotherhood, etc., v. Missouri Pacific Freight Transport, 220 S.W.2d 219, writ refused N.R.E.; Mason & Dixon Lines v. Odom, 193 Ga. 471, 18 S.E.2d 841; Sutter v. Amalgamated, etc. Street Ry. Employees, 252 Ala. 364, 41 So.2d 190; Missouri Pacific Railway Co. v. United Brick & Clay Workers Union, 218 Ark. 707, 238 S.W.2d 945.

The material question here presented being whether ambulatory picketing is a proper exercise of the constitutional guarantee of free speech, and, if so, whether the manner in which appellants conducted such ambulatory picketing came within a proper exercise of such right. The appellants are entitled to clear and positive determination of the question by this Court. It will be seen from the record that the appellants have made proper points of error challenging the judgment of the trial court. Certainly they are entitled to a final decision *now* and their rights in the premises not passed undecided until a trial on the merits; leaving the question open, per the majority

opinion for further consideration by the trial court, thereby abridging appellants' constitutional right and subjecting them to contempt of court in exercising their lawful pursuit of picketing.

In this appeal the facts being undisputed and the law applicable thereto settled, presenting concrete question which this Court is duty bound to render final judgment. The matter should not be left in an abortive state. A litigant should not be restrained or deprived of his appellate right of appeal by an ineffectual, fruitless opinion which might deprive him of an appeal, or cause mandatory injunction directed to this Court on motion to the Supreme Court to effect a decision on the question involved. Appellants' motion for rehearing should be granted; cause reversed and rendered, dissolving the temporary injunction.

On Appellants' Second Motion for Rehearing.

Motion denied.

BOND, Chief Justice (dissenting).

The discussion of law applicable to this case has reached large proportions, but to decide the question correctly is the function of this Court, and that, too, on the record as here presented. The majority's original opinion to which I voiced my dissent, afterwards reduced to writing, states that "the material questions on the trial *on the merits* are whether ambulatory picketing is a proper exercise of the constitutional guaranty of free speech, and, if so, whether the manner in which appellants conducted such ambulatory picketing would or would not come within a proper exercise of such rights. But (says the majority), such are not the questions here. * * * An early trial on the merits should be had to settle such issues, and if such early trial is not accorded either party on request, appellants are fully protected by our statute, Art. 1824, Vernon's Ann.Civ.St."—writ of mandamus. 246 S.W.2d 680. (Emphasis mine.)

On motion for rehearing the majority holds that there is "a distinction between a legal ambulatory picketing and an illegal secondary picketing constituting a secondary boycott under our Anti-Trust statutes"

arising by reason of the fact that the suit to enjoin the picketing is brought by "innocent third parties who have no labor dispute" rather than by the employer with whom there is an admitted labor dispute. 246 S.W.2d 681. It will thus be seen that the majority holds, in effect, that ambulatory picketing generally is a proper exercise of the constitutional guaranty of free speech, but in the case at bar the manner in which appellants conducted such ambulatory picketing was unlawful, because, forsooth, "innocent third parties," rather than the employer with whom appellants are admittedly in a labor dispute, brought the suit to enjoin the picketing. In other words, such pronouncement is that a citizen has a constitutional right to engage in a constitutionally protected activity, but that such activity loses its constitutional protection, depending on who seeks to impose upon such right. The exercise of a constitutional right should never depend on who brought the lawsuit, and such rights cannot lawfully be abridged by parties who have suffered inconveniences and damages.

Our Texas Supreme Court, in Ex parte Henry, 147 Tex. 315, 215 S.W.2d 588, 595, which I referred to in my previous dissent, has put at rest the questions of law applicable to the case at bar, wherein is held: "Picketing does not offend against the statutes merely because third parties who came to the area of the dispute may prove sympathetic to one disputant rather than to the other."

This declaration of our Supreme Court has relation to "secondary picketing and boycotting and conspiracy in restraint of trade, as denounced by our statutes." The Court further said: "Our holding does not conflict with Carpenters and Joiners Union et al. v. Ritter's Cafe, Tex.Civ.App., 138 S.W.2d 223; Id., Tex.Civ.App., 149 S.W.2d 694; Id., 315 U.S. 722, 62 S.Ct. 807, 86 L. Ed. 1143; Borden Co. et al. v. Local No. 133 of International Brotherhood of Teamsters, Tex.Civ.App., 152 S.W.2d 828; er. ref., or Turner v. Zanes, Tex.Civ.App., 206 S.W.2d 144, er. ref. N.R.E., cited by respondents."

The Texas Supreme Court, in the Henry case, supra, cited with approval the holding in Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; Carlson v. People of State of Calif., 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104.

In the Thornhill case the United States Supreme Court said: "It may be that effective exercise of the means of advancing public knowledge may persuade some of those reached to refrain from entering into advantageous relations with the business establishment which is the scene of the dispute. Every expression of opinion on matters that are important has the potentiality of inducing action in the interests of one rather than another group in society. But the group in power at any moment may not impose penal sanctions on peaceful and truthful discussion of matters of public interest merely on a showing that others may thereby be persuaded to take action inconsistent with its interests."

In International Brotherhood, etc. v. Missouri Pacific Freight Transport, Tex. Civ.App., 220 S.W.2d 219, the dispute was with one Heisig. The operators of the Missouri Pacific Freight Transport were incidentally hampered by the picketing of Heisig in the vicinity of the place of business of the Missouri Pacific, plaintiff in the suit. Notwithstanding that Heisig was not a party to the suit, nevertheless the injunction was by the court dissolved. Likewise, in Sutter v. Amalgamated Street Railway Employees, 252 Ala. 364, 41 So.2d 190, and in Missouri Pacific Railway Co. v. United Brick & Clay Workers Union, 218 Ark. 707, 238 S.W.2d 945, the employers were in dispute, but were not parties to the suit; the courts held that innocent third parties were not entitled to enjoin the picketing. Again, in International Brotherhood of Teamsters Union v. Missouri Pacific Ry. Co., 218 Ark. 724, 238 S.W.2d 950, injunction was denied to a third party, "stranger" to the suit, where the employer was not a party to the proceedings. In Sutter v. Amalgamated Ass'n of Street Railway and M.C.E., 252 Ala. 364, 41 So.2d 190, the owner of a bus terminal sought to restrain picketing on the streets and sidewalks adjacent to the terminal which was directed against one of the several carriers using the terminal; as was indicated by signs carried by the pick-

ets, as here, shown in the majority's opinion; and although it appeared that other carriers used the terminal and space was leased to various concessionaires, the Alabama Supreme Court affirmed the action of the trial court in dissolving a temporary injunction, holding that the defendants were within their constitutional rights in picketing, and that any injury resulting from their lawful acts fell within the rule damnum absque injuria.

To the same effect as above, see Consolidated Realty Co. v. Dyers, Finishers & Bleachers Federation, 137 N.J.Eq. 413, 45 A. 2d 132; People v. Ribinovich, 171 Misc. 569, 13 N.Y.S.2d 135; also Pignataro v. DeJulis, 174 Misc. 836, 21 N.Y.S.2d 995; Schivera v. Long Island Lighting Co., 296 N.Y. 26, 69 N.E.2d 233, rehearing denied 296 N.Y. 851, 72 N.E.2d 31, affirming 270 App.Div. 852, 60 N.Y.S.2d 793.

In the last cited case the unions of the Building Trades Council maintained a picket line at a gateway leading from the public road into a subdivision in an effort to induce the builder to employ union men, as a result of which, union employees of the Lighting Company refused to cross the picket line to connect gas and electric services to the plaintiff's house. There the court in pointing out that there was unquestionably a labor dispute between the builder and the union, held that the fact that the plaintiff was not party to the labor dispute did not make the injunction any more appropriate. The court specifically said [296 N.Y. 26, 69 N.E.2d 234]: "It makes no difference who is the plaintiff. There is no jurisdiction to issue such an injunction on any one's application. * * *"

In Norman v. Sullivan, 185 Misc. 957, 57 N.Y.S.2d 855, 857, wherein an injunction was refused to a third-party plaintiff where the employer was not a party to the suit, as here, the court said: "There is seldom, if ever, a strike but that some stranger to it suffers damage for which he cannot seek redress. These industrial facts of life were indubitably determined and considered by the Legislature when it enacted section 876–a [Civil Practice Act] and were in large measure recognized in the great body of law which had developed prior to the

enactment of that statute. If immediate strangers to a labor dispute, such as the plaintiffs herein, can in effect break a strike by [obtaining injunction] the efforts of the courts to safeguard the basic rights of labor would be rendered nugatory."

It is unfortunate in the circumstances of our times that Capital and Labor cannot reach an agreement in this labor dispute without resorting to the courts. Laws and legal systems must take over and expand to meet changed conditions and problems. It is recognized now that satisfactory hours and wages and working conditions in industry and a bargaining position which makes these possible have an importance which is not less than the interests of those in the business or industry directly concerned. The health of the present generation and of those yet unborn may depend on these matters, and the practices in a single factory may have economic repercussions upon a whole region and affect widespread systems of marketing. The merest glance at State and Federal Legislation on the subject demonstrates the force of the argument that labor relations are not matters of mere local or private concern. Free discussion concerning the conditions in industry and the causes of labor disputes appears to us indispensable to the effective and intelligent use of the processes of popular government to shape the destiny of modern industrial society. The issues raised by regulations, such as are challenged here, infringing upon the right of employees effectively to inform the public of the facts of a labor dispute are part of this larger problem. Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S. Ct. 954, 83 L.Ed. 1423.

The facts of a labor dispute must be regarded as within that area of free discussion, dissemination of information, and free advertisement of grievances by peaceful picketing guaranteed by the Federal Constitution as construed by our Supreme Court. The cardinal principles of our government are in the Bill of Rights, liberty of speech and the press, as contained in our Constitution, Federal and State. So long as Americans love liberty, the Bill of Rights will remain unchanged and unchangeable.

686

It is not a matter for our consideration as to whether or not the Constitution, or the constructions given it by our Supreme Courts with reference to the exercise of one's rights of free speech, the freedom of the press, or of religion, are justified. In the cases, as here, the Supreme Courts, Federal and State, have exercised the power vested in them by our Constitution to make the construction; hence it is the duty of this Court to respect such decisions, and the writer has no hesitancy in doing so. A common prejudice should not be found in one, whose duty it is to rectify errors.

The judgment of the court below should be reversed and here rendered, dissolving the temporary injunction with admonitory order to the effect as shall comport with the Bill of Rights of the Constitution and the decisions of our Supreme Court, affecting the rights of the parties here involved.